**SEALED**

FILED
2017 MAY 16 PM 12:51
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY ________ DEPUTY CLERK

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | **Criminal No.:** |
| | § | |
| **Plaintiff,** | § | **S E A L E D** |
| | § | **I N D I C T M E N T** SA 17 CR 380 DAE |
| | § | |
| **v.** | § | **COUNT ONE: 18 U.S.C. § 371 – Conspiracy to Commit Bribery** |
| | § | **COUNT TWO: 18 U.S. C. § 1956(h) - Conspiracy to Launder Monetary Instruments;** |
| **CARLOS I. URESTI (1); and VERNON C. FARTHING III (2);** | § | |
| | § | |
| **Defendants.** | § | **NOTICE OF GOVERNMENT'S DEMAND FOR FORFEITURE** |

**THE GRAND JURY CHARGES:**

**COUNT ONE**
**[18 U.S.C. §§ 371 & 666(a)(1)(B)]**

At all times material to this Information:

**A. PERSONS AND ENTITIES**

1. Reeves County is a county in Texas and includes the town of Pecos. Reeves County is governed by the Reeves County Commissioners Court, which is comprised of the Reeves County Judge and four County Commissioners. Reeves County is in the Western District of Texas.

2. The Defendant, **CARLOS I. URESTI** (**"URESTI"**) was and is the Texas State Senator for Senate District 19, which includes Reeves County. **URESTI** was elected to this position on or about November 7, 2006.

3. The Defendant, **VERNON C. FARTHING** III ("**FARTHING**") was the president of a company specializing in providing medical services to inmates ("**FARTHING's COMPANY**").

4. Co-Conspirator, JIMMY GALINDO ("GALINDO"), was the County Judge for Reeves County from on or about January 1, 1995 until on or about December 31, 2006. As County Judge, GALINDO was the presiding officer of the Reeves County Commissioners Court.

**B. REEVES COUNTY AWARDS CONTRACT TO FARTHING's COMPANY**

5. On or about August 10, 2005, **FARTHING**, on behalf of **FARTHING's COMPANY**, submitted a proposal (the "Proposal") to provide medical services to the Reeves County Detention Center R-3 (the "Facility"). **FARTHING** submitted the Proposal contingent upon Reeves County being awarded a contract by the Federal Bureau of Prisons to house Federal inmates at the Facility.

6. On or about May 24, 2006, the Federal Bureau of Prisons awarded Reeves County a contract to house federal inmates at the Facility.

7. On or about September 13, 2006, the Reeves County Commissioners Court voted to award **FARTHING's COMPANY** a contract to provide medical and related services at the Facility (the "R-3 Contract"). GALINDO, in his official capacity as Reeves County Judge, presided over the vote that awarded the R-3 Contract to **FARTHING's COMPANY**.

8. After approval by the Reeves County Commissioner's Court, on or about September 13, 2006, **FARTHING** signed the R-3 Contract on behalf of **FARTHING's COMPANY**. GALINDO, in his official capacity as Reeves County Judge, signed the R-3 Contract on behalf of Reeves County. The R-3 Contract called for Reeves County to pay

**FARTHING's COMPANY** a fee per inmate per day for healthcare.

9. At all times material to this Information, Reeves County, Texas was a local government that received Federal funding in excess of $10,000 per year.

**THE CONSPIRACY**

10. That from on or about January 1, 2005, and continuing through on or about September 30, 2016, in the Western District of Texas and elsewhere, the Defendants,

**CARLOS I. URESTI (1); and**
**VERNON C. FARTHING III (2);**

knowingly, intentionally, and unlawfully combined, conspired, confederated, and agreed together with each other, GALINDO, and others known and unknown to the Grand Jury, to commit an offense against the United States, that is, to corruptly solicit, demand, accept, and agree to accept a thing of value involving $5,000 or more intending to be influenced or rewarded in connection with a transaction and series of transactions of Reeves County, Texas, a local government entity which received more than $10,000 a year in Federal funding, in violation of Title 18, United States Code, Section 666(a)(1)(B).

**OBJECT OF THE CONSPIRACY**

11. The object of the conspiracy was for **URESTI** and **FARTHING** to conspire with GALINDO to use GALINDO's official position as Reeves County Judge to enrich themselves by GALINDO soliciting and accepting payments and other things of value from **FARTHING**, **FARTHING's COMPANY,** and its successor companies in exchange for favorable official action and to hide and cover-up this conspiracy from the taxpayers, citizens, and county commissioners of Reeves County through the use of payments to **URESTI**.

**MANNER AND MEANS**

12. The conspiracy was carried out through the following manner and means, among others:

a. While serving as the REEVES County Judge, GALINDO accepted payments, promises of future payments, and other things of value from **FARTHING**, through **FARTHING's COMPANY.**

b. In exchange for the payments and promises of future payments from **FARTHING** and **FARTHING's COMPANY**, GALINDO, acting in his official capacity as Reeves County Judge, presided over the vote that awarded the R-3 Contract to **FARTHING's COMPANY**. GALINDO further helped **FARTHING's COMPANY** negotiate, price, and secure the R-3 Contract from Reeves County on terms favorable to **FARTHING's COMPANY** and **FARTHING**.

c. In exchange for GALINDO's assistance in securing the R-3 Contract on terms favorable to **FARTHING's COMPANY**, **FARTHING**, through **FARTHING's COMPANY**, agreed to hire **URESTI** as a "consultant" and pay **URESTI** approximately $10,000 a month.

d. **URESTI** acted as a conduit for the payments from **FARTHING's COMPANY** and **FARTHING** to GALINDO and paid approximately half of the money he received from **FARTHING** and **FARTHING's COMPANY** to GALINDO.

e. **FARTHING** and GALINDO used **URESTI** as a conduit for payments for the purpose of concealing the source, origin, nature, ownership, and control of the proceeds paid to GALINDO from **FARTHING** and **FARTHING's COMPANY**.

f. To further the scheme, **URESTI** used a company called Turning Point Strategies, LLC ("TPS") and the **URESTI** law firm's IOLTA and Operating accounts to pay GALINDO his share of the payments from **FARTHING**, **FARTHING's COMPANY,** and its successor companies, and to hide and cover-up this conspiracy from the taxpayers, citizens, and county commissioners of Reeves County, amongst others.

**OVERT ACTS**

13. In furtherance of the conspiracy and to effect and accomplish its objects, GALINDO, **FARTHING**, and **URESTI** committed, among others, the following overt acts in the Western District of Texas and elsewhere:

a. On or about August 7, 2006, GALINDO, **URESTI**, and **FARTHING** met in Reeves County, Texas to discuss the R-3 Contract and that **FARTHING**, through **FARTHING's COMPANY**, would pay **URESTI** as a "consultant".

b. On or about September 13, 2006, GALINDO, acting in his official capacity as Reeves County Judge, presided over the vote to award the R-3 Contract to **FARTHING's COMPANY**.

c. On or about September 13, 2006, GALINDO, acting in his official capacity as Reeves County Judge, signed the R-3 Contract between **FARTHING's COMPANY** and the Reeves County Commissioners Court.

d. On or about September 20, 2006, **FARTHING** sent a letter, dated September 15, 2006, to **URESTI** agreeing to pay **URESTI** $10,000 a month for "marketing services."

e. On or about September 20, 2006, **FARTHING** sent and caused to be sent a check to **URESTI** for $10,000 as the initial payment to **URESTI** and GALINDO. Check number

19782 was drawn upon **FARTHING's COMPANY** bank account and was made payable to **URESTI**.

f. On or about January 4, 2007, **URESTI** formed TPS which was used, among other means, to pay GALINDO his share of the payments from **FARTHING** and **FARTHING**'s COMPANY.

g. From on or about September 20, 2006, until on or about September 30, 2016, **FARTHING's COMPANY**, and its successor companies, paid **URESTI** monies pursuant to the agreement between **URESTI**, **FARTHING** and GALINDO.

h. From on or about January 1, 2007, until on or about September 30, 2016, **URESTI** paid GALINDO approximately one-half of the payments from **FARTHING's COMPANY** and its successor companies. **URESTI** paid some of those payments to GALINDO using TPS. From some of those payments, **URESTI** deducted between approximately $250 and $500 for "office rent" despite the fact that GALINDO never rented an office from **URESTI** and **URESTI** refused to allow GALINDO to have office space at **URESTI**'s office.

i. On or about February 1, 2013, a check was written from **FARTHING's COMPANY** successor company's Bank of America Account number *****2788 payable to Uresti Law Firm, P.C in the amount of $7,500.

j. On or about February 5, 2013, **URESTI** deposited and caused the check to be deposited into the "Uresti Law Firm PC IOLTA Trust's" Chase Account number *****3941.

k. On or about February 8, 2013, **URESTI** caused a wire transfer into GALINDO's Bank of America Account number *******7845 in the amount of $3,750, referencing "Half of

PNA Check".

l. On or about December 16, 2013, a check was written from **FARTHING's COMPANY** successor company's Bank of America Account number *****2788 payable to Uresti Law Firm, P.C in the amount of $5,000.

m. On or about December 19, 2013, **URESTI** deposited and caused the check to be deposited into the "Uresti Law Firm PC IOLTA Trust's" Chase Account number *****3941.

n. On or about December 19, 2013, **URESTI** caused a wire transfer into GALINDO's Bank of America Account number *******7845 in the amount of $2,250, referencing "Half of PNA Check".

o. On or about April 4, 2014, a check was written from **FARTHING's COMPANY** successor company's Bank of America Account number *****2788 payable to Uresti Law Firm, P.C in the amount of $5,000.

p. On or about April 8, 2014, **URESTI** deposited and caused the check to be deposited into the "Uresti Law Firm PC IOLTA Trust's" Chase Account number *****3941.

q. On or about April 8, 2014, **URESTI** caused a wire transfer into GALINDO's Bank of America Account number *******7845 in the amount of $2,250, referencing "Half of PNA Check".

All in violation of Title 18, United States Code, Sections 371 and 666(a)(1)(B).

**COUNT TWO**
**(Conspiracy to Launder Monetary Instruments)**
**(18 U.S.C. §1956(h))**

14. Count Two incorporates by reference, as if fully set forth herein, paragraphs 1-13 as set forth above.

15. From on or about September 1, 2006, and continuing through on or about September 30, 2016, in the Western District of Texas and elsewhere, the Defendants,

**CARLOS I. URESTI (1); and**
**VERNON C. FARTHING III (2);**

did knowingly combine, conspire, and agree with each other, GALINDO, and with other persons known and unknown to the Grand Jury to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce, which transactions involved the proceeds of a specified unlawful activity, that is, Bribery in violation of Title 18, United States Code, Section 666(a)(1)(B), knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of that specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

All in violation of Title 18, United States Code, Section 1956(h).

## NOTICE OF UNITED STATES OF AMERICA'S DEMAND FOR FORFEITURE
**[*See* Fed. R. Crim. P. 32.2]**

This Notice of Demand for Forfeiture includes but is not limited to the property described below.

### I.
### Conspiracy to Commit Bribery Violation & Forfeiture Statutes
**[Title 18 U.S.C. §§ 371 & 666(a)(1)(B); subject to forfeiture pursuant to Title 18 U.S.C. § 981(a)(1)(C), made applicable to criminal forfeiture by Title 28 U.S.C. § 2461(c)]**

As a result of the foregoing criminal violations set forth in Count One, the United States of America gives notice to Defendants CARLOS I. URESTI (1) and VERNON C. FARTHING III (2) of its intent to seek the forfeiture of property upon conviction and pursuant to Fed. R. Crim. P. 32.2 and Title 18 U.S.C. § 981(a)(1)(C), made applicable to criminal forfeiture by Title 28 U.S.C.

§ 2461(c), which state:

**Title 18 U.S.C. § 981.**

**(a)(1)** The following property is subject to forfeiture to the United States:

* * *

**(C)** Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of section . . . or any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

Bribery is an offense constituting "specified unlawful activity" as defined in Title 18 U.S.C. § 1956(c)(7).

**Title 28 U.S.C. § 2461.**

**(c)** If a person is charged in a criminal case with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized, the Government may include notice of the forfeiture in the indictment or information pursuant to the Federal Rules of Criminal Procedure.

**II.**
**Money Laundering Violations and Forfeiture Statutes**
**[Title 18 U.S.C. § 1956(h), subject to forfeiture pursuant to Title 18 U.S.C. § 982(a)(1)]**

As a result of the foregoing criminal violations set forth in Count Two, the United States of America gives notice to Defendants CARLOS I. **URESTI** (1) and VERNON C. **FARTHING** III (2) of its intent to seek the forfeiture of the property described below upon conviction pursuant to Fed. R. Crim. P. 32.2 and Title 18 U.S.C. § 982(a)(1), which states:

**§ 982. Criminal forfeiture**

**(a)(1)** The court, in imposing sentence on a person convicted of an offense in violation of section 1956, 1957 . . . shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property.

**III.**
**Money Judgment**

An amount of money which represents the amount of proceeds obtained directly or indirectly as a result of the violations set forth above for which Defendants CARLOS I. **URESTI** (1) and VERNON C. **FARTHING** III (2) are jointly and severally liable.

**IV.**
**Substitute Assets**

If any of the property described above, as a result of any act or omission of Defendants:

a. cannot be located upon the exercise of due diligence;
b. has been transferred or sold to, or deposited with, a third person;
c. has been placed beyond the jurisdiction of the Court;
d. has been substantially diminished in value; or
e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States of America to seek the forfeiture of any other property owned by Defendants CARLOS I. URESTI (1) and VERNON C. FARTHING III (2) up to the value of the Money Judgment as substitute assets pursuant to Fed. R. Crim. P. 32.2 and Title 21 U.S.C. § 853(p).

A TRUE BILL



FOREPERSON OF THE GRAND JURY

RICHARD L. DURBIN, JR.
United States Attorney

By: ______________________
JOSEPH E. BLACKWELL
Assistant United States Attorney

______________________
WILLIAM R. HARRIS
Assistant United States Attorney